UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                          :
WERNER BRUDI,                         :
                      Petitioner,  :
                         :           14-CV-962 (JPO)
         -v-                :
                         :           OPINION AND ORDER
UNITED STATES OF AMERICA,      :
                    Respondent.  :
                         :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

    Werner Brudi petitions this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Dkt. No. 1 ("Pet.").) Brudi challenges the legality of his sentence entered in *United States v. Brudi*, No. 11 Cr. 858 (JPO) (S.D.N.Y. Nov. 27, 2012) (amended judgment filed March 20, 2013), *aff'd*, 536 F. App'x 131 (2d Cir. 2013), following his plea of guilty to charges of mail and wire fraud. Brudi contends that his counsel provided ineffective assistance at both the guilt and sentencing stages of the proceedings. For the reasons that follow, Brudi's petition is denied.

**I.    Background**

    Werner Brudi was charged by information with two counts of wire fraud pursuant to 18 U.S.C. § 1343, and two counts of mail fraud pursuant to 18 U.S.C. § 1341. (Information, *United States v. Brudi*, No. 11 Cr. 858 (JPO) ("*Brudi I*"), Dkt. No. 11 (Oct. 7, 2011).) The information describes the underlying illegal conduct:

    From September 2004 to August 2010, Brudi engaged in a scheme to defraud members of the investing public. (*Id.* ¶ 1.) He made false representations to potential investors to induce them to give him money to invest in the stock market on their behalf. These false representations included, for example, claims that he would earn an above-market rate of return, and that the

investments would remain liquid owing to his day-trading strategy. Brudi made these false representations orally and in letters mailed to investors. (*Id.* ¶ 2.)

Brudi raised at least $726,000 through his fraudulent statements, some of which he received by wire transfer. (*Id.* ¶¶ 3-4.) He deposited only a fraction of the money into a brokerage account; he used the remaining funds for personal expenses such as monthly rent and dental bills. (*Id.* ¶ 3.) To conceal his scheme, Brudi provided "account statements" to the victim investors in which he described market conditions and set forth fictitious inflated balances of the victims' investment accounts. (*Id.* ¶5.) He also made small "lulling payments" to the victims to induce them to invest additional funds. (*Id.* ¶ 6.) In late 2009, Brudi began refusing requests by investors to withdraw their money; soon thereafter, he began informing investors that all of their money was gone. (*Id.* ¶ 7.)

Brudi pleaded guilty to all four counts. (Transcript of Plea, *Brudi I*, Dkt. No. 15 (May 10, 2012).) The Probation Office prepared a Presentence Investigation Report ("PSR") recommending a Sentencing Guidelines range of 33-41 months' imprisonment and three years' supervised release. (PSR ¶ 6, 63.) The Court agreed with the PSR's Guidelines calculation and imposed a below-Guidelines sentence of 24 months' imprisonment and two years' supervised release. (*Brudi I*, Dkt. No. 21 (Nov. 27, 2012).) Brudi appealed his sentence on the grounds that it was procedurally and substantively unreasonable. The Second Circuit affirmed in an unpublished summary order. *See United States v. Brudi*, 536 F. App'x 131 (2d Cir. 2013).

Brudi now seeks post-conviction relief under 28 U.S.C. § 2255. He contends that defense counsel was ineffective during both the guilt and sentencing stages of the proceedings.[1] First,

---

[1] Brudi previously filed a motion under § 2255 challenging the same conviction. Because the prior motion was dismissed without prejudice as premature, Brudi's current application is not a second or successive petition, and therefore the restrictions AEDPA imposes on such petitions do not apply here. *See Villanueva v. United States*, 346 F.3d 55, 60 (2d Cir. 2003) (citing *Stewart v.*

2

Brudi argues that counsel was ineffective when, prior to Brudi's guilty plea, he did not instruct Brudi, who is not a United States citizen, that he would be deported as a result of his conviction. (Pet. at 5.) Second, he contends that counsel was ineffective in failing to provide him the Government's sentencing submission until the day before sentencing and in not giving him the defense's submission until a week before sentencing. (*Id*. at 6.) Third, he argues that counsel was ineffective in failing to raise various objections to the Government's position at the sentencing hearing—objections that Brudi alleges counsel "avowed" he would make. (*Id.* at 8-13; Dkt. No. 7 ("Reply") at 1.)[2]

## II. Legal Standard

### A. 28 U.S.C. § 2255

A prisoner in federal custody may bring a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack.

In ruling on a § 2255 motion, the court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To

---

*Martinez-Villareal*, 523 U.S. 637, 643-44 (1998)). (*See* Order of Dismissal, *Brudi v. United States*, 13 Civ. 1674 (JPO), Dkt. No. 4 (Mar. 26, 2013).)

[2] The Court construes Brudi's *pro se* habeas petition liberally, and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

warrant a hearing, a petitioner's "application must contain assertions of fact that [the] petitioner is in a position to establish by competent evidence." *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987). "Whether there is a genuine issue of material fact depends on the sufficiency of those factual allegations." *Id.* "Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *Id.* at 113-14.

"In determining whether the assertions in a § 2255 motion warrant . . . a hearing, the court must also take into account admissions made by the defendant at his plea hearing, for '[s]olemn declarations in open court carry a strong presumption of verity.'" *Gonzalez*, 722 F.3d at 131 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)) (alteration in *Gonzalez*). More generally, a district court need not assume the credibility of factual assertions where they are contradicted by the record in the underlying proceeding. *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). If it "plainly appears" from the motion, exhibits, and record of prior proceedings that the habeas petitioner is not entitled to relief, "the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. foll. § 2255.

### B. Ineffective Assistance of Counsel

Turning to the merits, Brudi's petition attacks his sentence on the ground that defense counsel was ineffective. "A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty and sentencing." *Gonzalez*, 722 F.3d at 130 (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012); *Glover v. United States*, 531 U.S. 198, 202-04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967)). To establish a claim of ineffective assistance of counsel, a petitioner must show: (1) that his attorney's performance fell below "an objective standard of reasonableness" under "prevailing

professional norms;" and (2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "This standard is 'highly demanding.'" *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986)). "The [ineffective assistance of counsel] claim must be rejected if the [petitioner] fails to meet either the performance prong or the prejudice prong." *Id.*

When considering the first prong of the *Strickland* test, a court must apply a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. Further, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690) (citation omitted).

Once a petitioner has shown that an attorney's performance was objectively unreasonable, he must still prove prejudice. To do so, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 693). "The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In order to satisfy the prejudice prong for a claim related to a guilty plea, "the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have

5

pleaded guilty and would have insisted on going to trial." *Gonzalez*, 722 F.3d at 130 (quoting *Hill*, 474 U.S. at 59) (internal quotation marks omitted).  With respect to a claim that counsel was ineffective at sentencing, the petitioner must show a "reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Id.* (citing *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012); *Glover*, 531 U.S. at 203).

### III. Discussion

#### A. *Padilla* Claim

Brudi's first ground for relief is that counsel was ineffective in not advising him prior to his guilty plea that his conviction "will result" in deportation.  (Pet. at 5.)  Counsel, however, had no obligation to inform Brudi, who is not a United States citizen, of the immigration consequences of his conviction in such certain terms.  Rather, courts in this District have interpreted the Supreme Court's holding in *Padilla v. Kentucky*, 559 U.S. 356 (2010), as requiring only that counsel inform her client whether his guilty plea carries a "risk of deportation."  *See Marte v. United States*, 952 F. Supp. 2d 537, 541 n.2 (S.D.N.Y. 2013) ("Marte relies on *Padilla* . . . to argue that because deportation was mandatory for his offense that he suffered ineffective assistance of counsel when he was not informed of the mandatory nature of his deportation. . . . However, this District, post *Padilla*, has denied ineffective assistance of counsel claims, even for mandatory deportation, where the petitioner affirmed his understanding of the potential for deportation during the plea allocution." (citing *Ottenwarde v. United States*, No. 12 Civ. 6537 (JGK), 2013 WL 1242632, at *2 (S.D.N.Y. Mar. 28, 2013))); *see also Padilla*, 559 U.S. at 374 ("It is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the mercies of incompetent counsel.  To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation." (internal quotation marks and citation omitted)).

To the extent that Brudi intends to argue that counsel did not advise him that his guilty plea carried a risk of deportation, that contention is belied by the record. At the plea hearing, the Court engaged Brudi in the following colloquy:

| | |
|---|---|
| The Court: | Are you a United States citizen? |
| The Defendant: | No, I'm not. |
| The Court: | OK. You understand that a guilty plea, as any conviction of a felony, makes it far easier for the government to deport you? |
| The Defendant: | I heard that, yes. |
| The Court: | Have you had a chance to discuss that with your attorney? |
| The Defendant: | Yes. |

(Transcript of Plea at 9-10, *Brudi I*, Dkt. No. 15.)³ Brudi was unequivocal in this short colloquy that he had discussed the increased risk of deportation that would result from his guilty plea. "No evidentiary hearing is necessary on the basis of unsupported allegations that merely contradict sworn statements made earlier at a plea allocution." *Ottenwarde*, 2013 WL 1242632, at *6 (citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992)); *see also Blackledge*, 431 U.S. at 74 (a defendant's sworn statements made at his plea allocution "carry a strong presumption of verity"). Accordingly, Brudi's first ground for habeas relief is denied.⁴

---

³ The clarity of this exchange undermines Brudi's argument that he was misled by the Government's *Pimentel* letter, submitted prior to Brudi's guilty plea, which stated: "Based on the defendant's representation that he/she is a citizen of the United States, the defendant is not subject to deportation from the United States as a collateral consequence of his guilty plea and conviction." (*Brudi I*, Gov't *Pimentel* Letter (not docketed).)

⁴ The Court need not analyze the second prong of the *Strickland* test because Brudi has failed to satisfy the first prong. *Gonzalez*, 722 F.3d at 130. However, even if Brudi's counsel had unconstitutionally failed to advise him of the immigration consequences of his plea, his *Padilla* claim still fails to satisfy *Strickland*'s second prong. First, "[a] defendant fails to satisfy the 'prejudice prong' of *Strickland* where his attorney fails to inform him of the potential for deportation but the deportation consequences are otherwise addressed in the plea agreement or allocution." *Marte*, 952 F. Supp. 2d at 540 (collecting cases). Here, the potential immigration

7

B.   **Ineffective Assistance Prior to Sentencing**

Next, Brudi contends that counsel was ineffective in not providing Brudi with certain sentencing documents in a timely manner. Brudi says that counsel gave him the Government's sentencing submission the day before the sentencing hearing, and the defense's submission the week before the hearing. (Pet. at 6.) Because the Thanksgiving holiday immediately preceded the hearing, Brudi alleges that he was unable to talk to counsel about either document until the day before the hearing. (*Id.*)

Assuming without deciding that defense counsel in fact delayed showing Brudi the relevant sentencing documents (a fact that the Government disputes, *see* Gov't Response at 9 (not docketed)), and that this delay constituted ineffective assistance, Brudi has not shown that he was prejudiced as a result. He states generally that he was not allowed time for "recourse, discussion or subsequent adjustment" (Reply at 2), and that the delay "cancel[ed] any discussion on [the] merits and allow[ed] no opportunity for preparation of rebuttal" (Pet. at 6). First, these statements are belied by the record. At sentencing, when asked if he had read the PSR and discussed it with his attorney, Brudi responded affirmatively. (Transcript of Sentencing at 3, *Brudi I*.) Second, Brudi has not pointed to any specific objections he would have made had he been provided with the sentencing documents earlier, let alone shown that, as a result of these objections, there is a reasonable probability that he would have received a lighter sentence. *See Gonzalez*, 722 F.3d at 130. Instead, he expresses only airy generalities as to the benefits of

---

consequences of the conviction were made clear to Brudi by the Court at sentencing. Second, Brudi has not alleged that, had counsel informed him that his conviction could lead to his deportation, there is a reasonable probability that he would have insisted on going to trial. Such an allegation is required to show prejudice here. *Gonzalez*, 722 F.3d at 130.

8

having more time to review the sentencing submissions; such generalities do not entitle him to a hearing, let alone habeas relief. *See Aiello*, 814 F.2d at 113-14.[5]

### C. Ineffective Assistance at Sentencing

Finally, Brudi argues that his counsel was ineffective at sentencing in not making various objections to the Government's position—objections that Brudi says his lawyer promised he would make. (Reply at 1.) The Court takes each of these objections in turn.

*Length of Offense, Solicitation, and Intent to Defraud:* Brudi contends that his counsel should have objected to the Government's "inaccurate" assertion that the offense lasted from 2004 to 2010. (Pet. at 9.) Counsel, however, had no reason to counter this assertion; Brudi had pleaded guilty to fraudulent conduct lasting from 2004 to 2010 at his plea hearing. (Transcript of Plea at 12, *Brudi I*, Dkt. No. 15 ("Between about 2004 and 2010, I told various persons that I would invest money on their behalf in the S&P 500 Stock Index.").) Brudi's arguments that defense counsel should have opposed the Government's statements that Brudi solicited investors (*see* Reply at 8), and that he intended to defraud investors (*see id.* at 12), fail for the same reason: Brudi explicitly admitted this conduct at his plea hearing. (Transcript of Plea at 8, 12, *Brudi I*, Dkt. No. 15.) Defense counsel is not ineffective for failing to make a motion that would have been futile. *United States v. Abad*, 514 F.3d 271, 276 (2d Cir. 2008); *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), *disapproved on other grounds*, *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 (2003).[6]

---

[5] To the extent that the prejudice alleged is the failure to develop and present Brudi's objections to the PSR, this argument fails for the same reason those objections fail. *See infra* section C.

[6] Brudi's argument that counsel was ineffective in not objecting to the Government's statement that Brudi promised a particular percentage gain to his investors (Reply at 9), fails for the simple reason that the exhibits Brudi cites are post-sentencing filings by the Government. (*See id.* Ex. A; Pet. Ex. H.) Accordingly, counsel could not have objected to these statements at sentencing.

9

*Lifestyle:* Second, Brudi argues that his counsel should have objected to the Government's statement that he used the stolen funds to pay for an "exceptionally comfortable lifestyle" for himself (Pet. at 9), including an apartment with a rent greater than $2,200 (Reply at 7). The Court has been unable to locate the quoted phrase in the record. In fact, the Government stated in its presentence filing that it "does not dispute that the defendant's lifestyle was relatively *modest*—he used his victim's money frugally rather than wasting it . . . ." (Gov't Sentencing Memorandum at 1, *Brudi I*, Dkt. No. 20 (emphasis added).) And while the Government indeed stated that Brudi was spending over $2,200 on rent (*Id.*), Brudi's own exhibits show that this statement was true at the time it was made (Reply Ex. F (two-year lease signed in 2011 showing a monthly rent of $2226.64)). Because there was no basis for defense counsel to object to these statements, counsel was not ineffective in failing to do so.

*Loss Amount:* Finally, Brudi contends that his counsel should have objected to the Government's loss calculation. At sentencing, both parties agreed that Brudi took $726,000 from his victims. The Government, however, argued for a loss amount of $611,000, reflecting the fact that Brudi had returned $115,000 to investors over the course of the scheme. Defense counsel contended that the amount returned was $200,000, and that the loss amount was therefore less than $526,000. The Court deemed the debate without import, as either calculation resulted in a loss amount of between $400,000 and $1,000,000, and a corresponding 14-level increase to Brudi's base offense level. *See* U.S.S.G. § 2B1.1(b)(1) (2012). Accordingly, the Court adopted this 14-level increase. (Transcript of Sentencing at 4-6, *Brudi I*.)

Brudi now alleges that the correct loss amount was $117,393 and that counsel was ineffective in not advocating this amount. (Pet. at 8, 10; *id.* Exs. B, C, D, F, I.) He supports his argument with a balance sheet and various exhibits. The balance sheet—which appears to have been created by Brudi for the sole purpose of supporting his habeas petition—begins with

$726,000 in "monies received from investors." Three categories of expenses are subtracted from this amount: (1) payments made to victims; (2) costs of trading; and (3) losses from trading. (*Id.* Ex. I.) This accounting does not entitle Brudi to a hearing, let alone habeas relief.

First, "costs of trading," which include, according to Brudi, charges for each trade, a real time index data feed, software, and Internet service, are not permissible credits against loss where, as here, "victims were left with nothing of value when the fraud was uncovered." *See United States v. Boyers*, 586 F.3d 222, 226 (2d Cir. 2009) (holding that, in investment fraud case, deducting the defendant's costs is inappropriate where his "expenditures, legitimate or not, conferred nothing of value and no benefit on his victims, who were his investors and creditors" (citing U.S.S.G. § 2B1.1 cmt. n. 3(E)(i))). The same is true for Brudi's alleged losses from the little trading he actually engaged in: because Brudi's victims were left with nothing of value when the fraud was uncovered, these expenses cannot be credited against loss. *Id.*; *cf. United States v. Leonard*, 529 F.3d 83, 93 (2d Cir. 2008) (holding that the district court erred in calculating loss based on the total value investors paid for securities because "investors did obtain an interest in a company engaged in producing and distributing a motion picture" and the securities likely had some "actual value").

As for the final category of Brudi's credits against loss—"payments made"—Brudi provides no support, other than the one-page balance sheet he has created, for his assertion that he repaid $424,409 to his victims. This balance sheet is contrary to the restitution investigation, which found that the victims had been returned only $93,900 of their investments over the course of the offense. (*See* Brudi I, Schedule of Victims (under seal).)[7] Brudi consented to this

---

[7] Although restitution is not always identical to loss, it is a good proxy here, where the loss in question is actual loss. *See United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 102-03 (2d Cir. 2014) (explaining that restitution encompasses "actual loss," while the Guidelines loss amount can be actual or intended loss).

restitution calculation at the time it was made, and gives the Court no reason to question the validity of that consent.[8] (*Id.* Dkt. No. 39). Further, even were the Court to assume that Brudi's calculations are correct, his petition is insufficient to establish that counsel was ineffective in not presenting them to the court. Brudi does not allege that counsel knew of the calculations and that they were sufficiently supported by evidence so as to be persuasive at sentencing. Thus, Brudi has failed to make a showing sufficient to warrant a hearing on this claim.

## IV. Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

The Clerk of Court is directed to close the case.

Dated: November 17, 2014
New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PETITIONER

---

[8] Brudi's consent was conveyed by a different attorney than the attorney who is the subject of Brudi's ineffective assistance claims. (Letter from Lawrence A. Dubin, *Brudi I*, Dkt. No. 39.)